UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN RE:                                                               Case No. 18-45185

INDIANA HOTEL EQUITIES, LLC,                Chapter 11

                 Debtor.                              Judge Thomas J. Tucker
_____/

**OPINION REGARDING THE INDIANAPOLIS AIRPORT AUTHORITY'S
"MOTION FOR RELIEF FROM THE AUTOMATIC STAY AND FOR OTHER
RELIEF"**

**I. Introduction**

Section 362(b)(10) of the Bankruptcy Code says that the automatic stay of § 362(a) does not apply to any act by a lessor to obtain possession of property it leased to the bankruptcy debtor under a nonresidential lease of real property, *if* the lease "has terminated by the expiration of the stated term of the lease," either before the bankruptcy case was commenced, or during the case. And Bankruptcy Code § 541(b)(2) says that in that situation, any interest of the debtor under the lease is not property of the bankruptcy estate. This Chapter 11 case requires the Court to decide what it means to say that a lease of nonresidential real property has terminated by "the expiration of the stated term of the lease." Specifically, does this statutory phrase include a lease that has been terminated *early*, by the lessor's exercise of a right given in the lease to terminate the lease early, due to the debtor-lessee's default? The Court concludes that it does not.

This case came before the Court for a hearing on May 17, 2018, on the motion filed by the Indianapolis Airport Authority (the "IAA"), entitled "Indianapolis Airport Authority's Motion for Relief From the Automatic Stay and for Other Relief" (Docket # 15, the "Motion").

The Debtor, Indiana Hotel Equities, LLC, filed an objection to the Motion, and then a concurrence in that objection was filed by a creditor, Indiana Hotel Ventures, LLC.

After the May 17, 2018 hearing, the Court entered an Order permitting briefing by the parties on a specific issue, having to do with Indiana law on collateral estoppel.[1] The Order also scheduled a final hearing for June 13, 2018 (later adjourned to June 20, 2018), at which time the Order stated that the Court intends to issue an oral opinion on the Motion.

The Court has considered the post-hearing briefs filed by the parties.[2] And the Court has considered all of the oral and written arguments of the parties regarding the Motion, and the exhibits and other items filed in support of and in opposition to the Motion.[3] The Court has decided to issue a written decision on the Motion, rather than give an oral opinion. This Opinion and the order to follow will constitute the Court's decision on the Motion, and the June 20, 2018 hearing will be cancelled, as no longer necessary.

For the following reasons, the Court will deny the Motion, without prejudice to the extent described below.

**II. Jurisdiction**

This Court has subject matter jurisdiction over this bankruptcy case and this contested matter under 28 U.S.C. §§ 1334(b), 157(a) and 157(b)(1), and Local Rule 83.50(a) (E.D. Mich.). This contested matter is a core proceeding, under 28 U.S.C. §§ 157(b)(2)(A) and 157(b)(2)(O).

---

[1] Docket # 37.

[2] Docket ## 39, 41, 42.

[3] Docket ## 15, 23, 24, 32, 35, and 36.

In addition, this contested matter falls within the definition of a proceeding "arising under title 11" and of a proceeding "arising in" a case under title 11, within the meaning of 28 U.S.C. § 1334(b). Matters falling within either of these categories in § 1334(b) are deemed to be core proceedings. *See Allard v. Coenen* (*In re Trans-Industries, Inc.*), 419 B.R. 21, 27 (Bankr. E.D. Mich. 2009). This is a proceeding "arising under title 11" because it is "created or determined by a statutory provision of title 11," *see id.*, namely Bankruptcy Code §§ 362(b)(10) and 541(b)(2). And this is a proceeding "arising in" a case under title 11, because it is a proceeding that "by [its] very nature, could arise only in bankruptcy cases." *See Allard v. Coenen*, 419 B.R. at 27.

### III. Discussion

Based on facts presented by the parties that are undisputed, the Court finds and concludes as follows.

#### A. Background

The Debtor operates a hotel, located at 2500 South High School Road in Indianapolis, Indiana, near the Indianapolis airport. But the Debtor does not own the land or building where the hotel is located. That real property (the "Property") is owned by the IAA. The Debtor leased this Property from the IAA, beginning in January 2016.

The lease was first made in September 1960, between predecessors-in-interest of the IAA and the Debtor. Beginning in January 2016, the IAA as lessor, and the Debtor as lessee, were the parties to the lease, by virtue of an agreement called the "Lease Amendment," dated January 6, 2016. (A copy of this lease amendment, the "Lease Amendment," is included within Exhibit 6-A to the IAA's Motion. A copy of the entire Lease, including the Lease Amendment (the "Lease"), appears at Exhibit 6-A to the IAA's Motion).

Under the Lease Amendment, the stated term of the Lease was "for a term of seventy-two (72) years, commencing July 1, 1962, and ending on June 30, 2034."[4] The Lease is a lease of "nonresidential real property" within the meaning of 11 U.S.C. §§ 362(b)(10) and 541(b)(2), quoted below.

By virtue of the Lease Amendment, the Lease contained certain requirements that the Debtor had to meet in order to avoid a default, and the Lease provided certain remedies to the IAA in the event of a default by the Debtor, including cancellation of the Lease. In a letter to the Debtor dated May 11, 2017 (the "May 11, 2017 Termination Letter"), the IAA stated that the Debtor had defaulted under the Lease, and purported, under "Section 15 of the Lease," to cancel the Lease "in its entirety effective at 12:00 midnight on July 11, 2017."[5]

This led to litigation between the parties. The Debtor filed suit against the IAA on July 12, 2017, in the Marion County, Indiana Superior Court, in the case titled *Indiana Hotel Equities, LLC v. Indianapolis Airport Authority*, Case No. 49D01-1701-PL-027076 (the "Indiana Lawsuit").[6] The parties eventually filed cross-motions for summary judgment. On March 28, 2018, the court in the Indiana Lawsuit denied the Debtor's motion and granted the IAA's motion, thereby entering summary judgment for the IAA. The Indiana court did this by means of a 27-page written opinion and order, filed on March 28, 2018 (the "State Court Decision").[7]

---

[4] Lease Amendment at 6, ¶ 3(a).

[5] Motion, Ex. 6-B.

[6] *See* Motion, Ex. 6-C (Debtor's state court complaint and its exhibits).

[7] "Order Denying Indiana Hotel Equities, LLC's Motion for Summary Judgment and Granting Indiana Airport Authority's Cross-Motion For Summary Judgment" (Motion, Ex. 6-E).

Among other things, the State Court Decision ruled, in part expressly and in part by clear, necessary implication, that: (1) the Debtor defaulted under the Lease and Lease Amendment in certain specified ways; (2) the IAA had a right to terminate the Lease because of the Debtor's default; (3) the IAA did validly terminate the Lease, by means of the May 11, 2017 Termination Letter, effective (as that letter stated) at 12:00 midnight on July 11, 2017; (4) because of such termination of the Lease, the Debtor had no right to possession of the Property; and (5) the IAA's receipt and retention of monthly rent checks from the Debtor after the July 2017 Lease termination was neither a waiver of the IAA's right to terminate the Lease nor a waiver of the IAA's actual termination of the Lease. In addition to granting summary judgment for the IAA, the Indiana court ordered that the Debtor and the Debtor's hotel manager, Indiana Hotel Ventures, LLC, "shall vacate and turn over possession of the Hotel to the IAA by April 14, 2018."[8]

The Debtor filed this Chapter 11 bankruptcy case on April 10, 2018, and remains in possession of the Property. Shortly before filing this bankruptcy case, the Debtor also filed, in the Indiana Lawsuit, a notice of appeal (filed April 6, 2018) and a motion for a stay pending appeal (filed April 10, 2018). The Indiana court has not yet ruled on the Debtor's motion for a stay pending appeal, presumably because of the Debtor's bankruptcy filing.

**B. The IAA's Motion**

Although the IAA's Motion is labeled, in part, as a "Motion for Relief from the Automatic Stay," the Motion actually does not seek relief from the automatic stay. Rather, the Motion only seeks an order confirming *that the automatic stay does not apply*, with respect to

---

[8] State Court Decision at 26-27.

actions the IAA wishes to take to obtain possession of the Property, based on Bankruptcy Code §§ 362(b)(10) and 541(b)(2). The Motion states:

> The Indianapolis Airport Authority (the "IAA") . . . hereby moves for an order, pursuant to section 362(d) of title 11 of the United States Code ("Bankruptcy Code") and Rules 4001(a) and 4001(d) of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules"): (i) confirming that a certain lease (the "Lease") between the IAA and debtor Indiana Hotel Equities, LLC (the "Debtor"), which was terminated prepetition, is not property of the Debtor's bankruptcy estate pursuant to section 54l(b)(2); (ii) further confirming that the automatic stay does not apply pursuant to section 362(b)(l0) of the Bankruptcy Code so that the IAA is free to exercise its contractual and state law remedies with respect to the Lease and the subject property; and (iii) waiving the 14-day stay of any Order granting this Motion pursuant to Bankruptcy Rule 4001(a)(3).[9]

The IAA's proposed order filed with the Motion is consistent with the foregoing Motion language.

## C. The parties' dispute about Bankruptcy Code §§ 362(b)(10) and 541(b)(2)

Based on the language of Bankruptcy Code §§ 362(b)(10) and 541(b)(2), the issue now before the Court is this: whether, before the April 10, 2018 bankruptcy petition was filed, the Lease was "terminated" "at" or "by" "the expiration of the stated term of such lease." The Court will decide this issue in two parts.

### 1. The Lease was terminated pre-petition.

First, the Court concludes that the Lease was indeed "terminated" before the April 10, 2018 petition date. The Court is bound to conclude this because of the March 28, 2018 State Court Decision, described above. That state court decision is a final judgment of the Marion

---

[9] Motion at 1.

County, Indiana Superior Court, and is conclusive on the issues it decided, under the doctrine of collateral estoppel.

This Court previously has explained how collateral estoppel applies in bankruptcy cases, under the federal Full Faith and Credit Statute, 28 U.S.C. § 1738:[10]

> In determining whether a state court judgment precludes relitigation of issues under the doctrine of collateral estoppel, the Full Faith and Credit Statute, 28 U.S.C. § 1738, requires bankruptcy courts to "'consider first the law of the State in which the judgment was rendered to determine its preclusive effect.'" *Bay Area Factors v. Calvert* (*In re Calvert*), 105 F.3d 315, 317 (6th Cir. 1997)(quoting *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 375 (1985)). If the state courts would not deem the judgment binding under collateral estoppel principles, then the bankruptcy court cannot do so either. But if the state courts would give preclusive effect to the judgment, then the bankruptcy court [generally] must also give the judgment preclusive effect[.]

*Taleb v. Kramer* (*In re Kramer*), 543 B.R. 551, 553 (Bankr. E.D. Mich. 2015) (footnote omitted) (quoting *McCallum v. Pixley* (*In re Pixley*), 456 B.R. 770, 775-76 (Bankr. E.D. Mich. 2011)); *see also Communitywide Fed. Credit Union v. Laughlin* (*In re Laughlin*), No. 3:13–CV–353 PS, 2014 WL 789127, at *5 (N.D. Ind. Feb. 25, 2014).

Under Indiana law, the State Court Decision must be given preclusive effect as to every issue it necessarily decided, under the doctrine of collateral estoppel, because all of Indiana's required elements for such issue preclusion are present. Under Indiana law,

---

[10] The Full Faith and Credit Statute states, in relevant part:

> The . . . judicial proceedings of any court of any . . . State . . . shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State . . . from which they are taken.

28 U.S.C. § 1738.

> [i]ssue preclusion, or collateral estoppel, "bars subsequent
> re-litigation of a fact or issue where that fact or issue was
> necessarily adjudicated in a prior cause of action and the same fact
> or issue is presented in a subsequent suit." *Small v. Centocor, Inc.*,
> 731 N.E.2d 22, 23 (Ind. Ct. App. 2000) (citing *Slutsky v. Crews*,
> 713 N.E.2d 288, 291 (Ind. Ct. App. 1999)). To invoke the doctrine,
> the party seeking estoppel must establish that: (1) there has been a
> final judgment on the merits in a prior action; (2) the issues are
> identical; and (3) the party to be estopped was a party or in privity
> with a party in the prior action. *Id.* at 28 (citing *Adams v. Marion
> County Office of Family and Children*, 659 N.E.2d 202, 205 (Ind.
> Ct. App. 1995)).

*Berry Plastics Corp. v. Illinois Nat'l Ins. Co.*, 244 F. Supp. 3d 839, 846 (S.D. Ind. 2017); *see also Tofany v. NBS Imaging Sys., Inc.*, 616 N.E.2d 1034, 1037 (Ind. 1993) ("Generally, collateral estoppel operates to bar a subsequent re-litigation of the same fact or issue where that fact or issue was necessarily adjudicated in a former suit and the same fact or issue is presented in the subsequent lawsuit."); *Jones v. Am. Family Mut. Ins. Co.*, 489 N.E.2d 160, 165 (Ind. Ct. App. 1986) ("Issue preclusion . . .'applies where the causes of action are not the same, but where some fact or question has been determined and adjudicated in the former suit, and the same fact or question is again put in issue in a subsequent suit between the same parties.'" (citation omitted)). Some cases indicate that under Indiana law the party to be precluded must have had a "full and fair opportunity" to litigate the issue in the prior action. *See*, *e.g.*, *Starzenski v. City of Elkhart*, 87 F.3d 872, 877 (7th Cir. 1996) (applying Indiana law).[11]

---

[11] *Starzenski* described Indiana law as follows:

> Issue preclusion bars the relitigation of "a particular issue, which was
> adjudicated in [a] prior action." For issue preclusion to apply, however, the
> issue in the subsequent case must have been "actually litigated and
> determined" in the prior litigation. In other words, the determination of the
> *issue* must have been essential to the court's determination in the prior
> action. If the plaintiffs had a "full and fair opportunity" to litigate the

8

In this case, both the Debtor and the IAA were parties to the Indiana Lawsuit;[12] both parties had a full and fair opportunity to litigate the issues in that case (and both parties did litigate the issues, vigorously); and the State Court Decision is a final judgment. So that State Court Decision has preclusive effect as to all the issues it necessarily decided. As described in Part III.A of this Opinion, those issues decided by the State Court Decision include the following: (1) that the Lease was validly terminated by the IAA in July 2017 (*i.e.*, almost 9 months before the Debtor filed this bankruptcy case on April 10, 2018); and (2) that the Debtor had no right to possession of the Property.

As Indiana law makes clear, the State Court Decision has preclusive effect even though the Debtor is appealing it. The State Court Decision retains its full preclusive effect while the appeal is pending, and unless and until it is reversed or modified on appeal. *See Daugherty v. Daugherty*, 83 N.E.2d 485, 486 (Ind. Ct. App. 1949) ("It is a well-established rule that an appeal from the judgment of the trial court does not have the effect of vacating the judgment of the trial court. **Such judgment is in full force and effect until it is reversed, and is binding on the**

---

issue, *any* party may use the prior litigation as a bar against the plaintiffs' relitigation of that issue in a subsequent proceeding.

87 F.3d at 877 (citations omitted) (italics in original).

[12] The Debtor cites the *Tofany* case to argue that under Indiana law this Court has discretion as to whether to give the State Court Decision preclusive effect under the doctrine of collateral estoppel/issue preclusion, depending on whether this Court views it as "fair and equitable" to do so. *See* Debtor's Br. Regarding Finality of Indiana State Court Order (Docket # 41) at 3-4, ¶¶ 5-7 (quoting *Tofany*, 616 N.E.2d at 1039). But as the IAA correctly points out, this holding in *Tofany* applies only to what *Tofany* described as the "offensive" use of collateral estoppel, which the court described as "the situation where the 'plaintiff seeks to foreclose the defendant from litigating an issue the defendant had previously litigated unsuccessfully **in an action with another party.**'" 616 N.E.2d at 1037,1038-39 (emphasis added) (citation omitted). By contrast, in the more traditional collateral estoppel situation, where both of the parties in the second action are the same parties as in the prior action, *Tofany* indicates that traditional issue-preclusion applies, with no indication that the court in the second action has any discretion. *See id.* at 1037.

**parties as to every question decided.**") (emphasis added); *Jones*, 489 N.E.2d at 166; *Starzenski*, 87 F.3d at 878; *United States (EPA) v. Envtl. Waste Control, Inc.*, 131 B.R. 410, 423 (N.D. Ind. 1991), *aff'd sub nom. Supporters to Oppose Pollution, Inc. v. Heritage Grp.*, 973 F.2d 1320 (7th Cir. 1992); Ind. R. App. P. 39(A) ("An appeal does not stay the effect or enforceability of a judgment or order of a trial court or Administrative Agency unless the trial court, Administrative Agency or Court on Appeal otherwise orders.").

As a result, this Court presently must take as a given that (1) the Lease was validly terminated by the IAA in July 2017, almost 9 months before the Debtor filed this bankruptcy case on April 10, 2018; and (2) as of both the bankruptcy petition date and as of now, the Debtor has had no right to possession of the Property. These points must be taken as conclusively established, unless and until the Debtor succeeds on its appeal in obtaining a modification or reversal of the State Court Decision.

**2. The Lease termination was not at or by "the expiration of the stated term of such lease."**

The second issue the Court must decide is whether this Lease that was terminated prepetition was terminated at or by "the expiration of the stated term of such lease" within the meaning of 11 U.S.C. § 541(b)(2) and 11 U.S.C. § 362(b)(10). The Court concludes that it was not.

These statutory provisions state:

> (b) Property of the estate does **not** include–
> . . . .
>
> (2) **any interest** of the debtor as a lessee under a lease of nonresidential real property that has **terminated** at the **expiration of the stated term of such lease** before the commencement of the

case under this title, and ceases to include any interest of the debtor as a lessee under a lease of nonresidential real property that has **terminated at the expiration of the stated term of such lease** during the case[.]

11 U.S.C. § 541(b)(2) (emphasis added).

> (b) The filing of a petition under section 301, 302, or 303 of this title, or of an application under section 5(a)(3) of the Securities Investor Protection Act of 1970, does **not** operate as a stay–
> . . . .
>
> (10) under subsection (a) of this section, of any act by a lessor to the debtor under a lease of nonresidential real property that has **terminated by the expiration of the stated term of the lease** before the commencement of or during a case under this title to obtain possession of such property[.]

11 U.S.C. § 362(b)(10) (emphasis added).

The IAA and the Debtor disagree about the meaning of the phrase "terminated at the expiration of the stated term of such lease" in § 541(b)(2), and the nearly identical phrase "terminated by the expiration of the stated term of the lease" in § 362(b)(10), although they agree that the phrases should be accorded the same meaning.

The IAA argues that the "stated term of the lease" means not only "the calendar date specified [in the lease] as the end of the lease term," but also an earlier date on which the lease is terminated under the terms of the lease, under applicable nonbankruptcy law, due to the lessee's uncured default "'prior to the expiration of its stated term.'"[13] The cases cited by the IAA, which support its interpretation, are: *In re Lakes Region Donuts, LLC*, No. BR 13-11823, 2014 WL 1281507, at *5 (Bankr. D.N.H. March 27, 2014); *In re Moore*, 290 B.R. 851, 880 (Bankr.

---

[13] Br. in Supp. of IAA's Mot. For Relief From the Automatic Stay and For Other Relief (Docket # 15, "IAA's Brief") at 11 (citation omitted); *see also* Reply Br. in Supp. of IAA's Mot. for Relief From the Automatic Stay and for Other Relief (Docket # 32) at 3-4 & n. 5.

N.D. Ala. 2003); *In re Southcoast Exp., Inc.*, 337 B.R. 739, 742-43 (Bankr. D. Mass. 2006); *In re Policy Realty Corp.*, 242 B.R. 121, 128 (S.D.N.Y. 1999), *aff'd on other grounds*, 213 F.3d 626 (2d Cir. 2000); *In re T.A.C. Grp., Inc.*, 294 B.R. 199, 202 (Bankr. D. Mass. 2003); *In re Tiny's Café, Inc.*, 322 B.R. 224, 226 (Bankr. D. Mass. 2005).

The Debtor disagrees, and argues that "[a]s noted by the leading treatises on bankruptcy law, '[e]xpiration of the stated term of the lease' means what it says, it does not mean a prepetition termination by a state court as argued by [the] IAA."[14] The Debtor argues that the statutory phrase does not include an early termination that was done by the lessor's exercise of a contractual right to terminate the lease due to the debtor's default. The Debtor cites the following cases, which support the Debtor's position: *Robinson v. Chicago Hous. Auth.*, 54 F.3d 316, 318 (7th Cir. 1995); *Acevedo v. SC Real Estate, LLC*, 526 B.R. 761, 766 (N.D. Ill. 2014); and *C.O.P. Coal Dev. Co. v. C.W. Mining Co.* (*In re C.W. Mining Co*.), 422 B.R. 746, 755-57 (B.A.P. 10th Cir. 2010), *aff'd*, 641 F.3d (10th Cir. 2011). And the Debtor cites the following treatises, which also support the Debtor's interpretation: 3 *Collier on Bankruptcy* ¶ 362.05 [10], at 362-76 (Richard Levin & Henry J. Sommer, eds., 16th ed. 2017);[15] Robert E. Ginsberg, Robert D. Martin & Susan V. Kelley, *Ginsberg & Martin on Bankruptcy* § 3.02 Exceptions to Automatic Stay, at ¶ [J][1] Non-Residential Leases (5th Ed. 2018-1 Supp.), *available at* Westlaw, GMBKR

---

[14] Debtor's Objection to Mot. For Relief From Stay (Docket # 23, the "Objection") at pdf p. 14 n.7 (footnote omitted).

[15] "It should be noted that this exception [to the automatic stay under § 362(b)(10)] is limited to leases under which the stated term expires, **not to leases terminated for other reasons.**" (Emphasis added) (footnote omitted).

12

§ 3.02.[16] Finally, the Debtor quotes a passage from a Senate Report that is part of the legislative history of §§ 362(b)(10) and 541(b)(2), which supports the Debtor's position: S. Rep. No. 98-65, at 68 (1983).[17]

The Court agrees with the Debtor's statutory interpretation. In this case, the date of "the expiration of the stated term of the lease" was and is June 30, 2034, and obviously that date has not passed yet. So the expiration of the stated term of the lease did not happen before the filing of this bankruptcy case, and has not happened yet. For this reason, neither § 362(b)(10) nor § 541(b)(2) applies, and the IAA's Motion must be denied.

This conclusion is consistent with the language of the Lease in this case. Section 2 of the Lease, as amended by the Lease Amendment, explicitly and unambiguously defines the "Term" of the Lease as "a term of seventy-two (72) years, commencing July 1, 1962, and ending on June

---

[16] "[T]he exception [under 11 U.S.C. § 362(b)(10)] only applies when a non-residential realty lease has terminated by the expiration of the stated term of the lease. When the landlord has allegedly terminated a lease under applicable nonbankruptcy law on account of a debtor-tenant's default, the stay still protects the debtor's possessory rights until the bankruptcy court has had time to examine the validity of the termination." (Footnote omitted).

[17] In discussing what became the 1984 amendments to Bankruptcy Code §§ 362 and 541, this Senate Report stated:

> Sec. 253: This section amends Section 541 of Title 11, United States Code, to make clear that the debtor's interest in property subject to a non-residential lease which has expired by virtue of its own terms is not property of the estate and that a proceeding to obtain possession of such property is not automatically stayed by Section 362 of the Code.
>
> This amendment is intended to permit landlords to proceed promptly in state court to reclaim possession of non-residential leased premises **where such lease has expired by its own terms, i.e., because a specified termination date of the lease has been reached.** This change is intended to facilitate the ability of the landlord to re-lease non-residential space to another tenant as soon as possible.

(Emphasis added).

30, 2034."[18] There is no language in the Lease's definition of the Lease's "Term," or anywhere else in the Lease, that limits that stated term of the Lease by the IAA's right, set forth in Section 15 of the Lease, to "cancel" the Lease "in its entirety" by written notice, upon the Debtor's default.[19] Rather, Section 15 of the Lease sets forth grounds upon which the IAA could end the Lease early, before the expiration of its stated term.

The Court is not persuaded by the IAA's statutory interpretation argument, and the Court respectfully disagrees with the cases that support the IAA's position. The IAA does not actually articulate *why* the Court should agree with its statutory interpretation. And neither do any of the cases cited by the IAA.[20]

The Court concludes that under the only reasonable reading of the statutory language at issue, the lease termination in this case was a termination *other than* at or by "the expiration of

---

[18] Lease Amendment at 6, ¶ 3(a).

[19] *See* Lease at 18-19, ¶ 15.

[20] The IAA quotes the *Moore* case, cited above, as saying that:

> § 362(b)(10)'s terminated by expiration of the stated term phraseology . . . may be read to be (i) the arrival of the stated date, e.g., March 1 of a given year, or a specific period from a fixed starting date, (ii) when the lessor by contract right may end the term on the occurrence of an event such as for a default, or (iii) when the contract specifies an act or occurrence by a third party or outside cause which ends the lease, such as by condemnation or destruction of leased property.

*Moore*, 290 B.R. at 880. The court in *Moore* did not explain *why* it concluded that § 362(b)(10) "may be read" in these different ways. And the Court respectfully disagrees with *Moore* about this. And the Court notes that this part of *Moore* is dicta, because *Moore* was a Chapter 13 case involving a lease of *residential* real property, not a lease of nonresidential real property. So § 362(b)(10) did not apply in *Moore* for that reason.

14

the stated term of the lease." It clearly was a termination of the Lease earlier than at the end of the Lease's stated term, due to Debtor's default.

The IAA's interpretation of the statutory language is not reasonable. The IAA's interpretation would make the statutory wording at issue superfluous. In effect, it would read the following bolded wording out of § 362(b)(10):

> a lease of nonresidential real property that has terminated **by the expiration of the stated term of the lease** before the commencement of or during a case under this title . . ..

(Emphasis added). So the IAA's interpretation would, in effect, read the statute as if it said this:

> a lease of nonresidential real property that has terminated before the commencement of or during a case under this title . . ..

The same is true of the IAA's reading of the same language in § 541(b)(2).

Congress knew how to write a statute that applies broadly to all lease terminations, including early lease terminations. It did so in Bankruptcy Code § 365(c)(3), which states that a lease may not be assumed or assigned if "such lease is of nonresidential real property and has been terminated under applicable nonbankruptcy law prior to the order for relief." 11 U.S.C. § 365(c)(3). This provision was enacted as part of the 1984 amendments to the Bankruptcy Code, at the same time current §§ 362(b)(10) and 541(b)(2) were enacted. The limiting words in the latter sections, at or by "the expiration of the stated term of the lease," narrow the type of lease termination that is covered, to something narrower than terminations covered by § 365(c)(3), and must be given some meaning. The IAA's interpretation does not do that.

Reading these statutes the IAA's way would be contrary to often-repeated instructions of the United States Supreme Court, which was repeated by the Supreme Court in a bankruptcy case

15

decided earlier this month. *See Lamar, Archer & Cofrin, LLP v. Appling*, No. 16–1215, 2018 WL 2465174, at *7 (U.S. June 4, 2018). In *Lamar*, the Supreme Court interpreted Bankruptcy Code §§ 523(a)(2)(A) and 523(a)(2)(B), and in doing so held, in part, that the interpretation argued by the debtor in that case "must be rejected, for it reads [the word] 'respecting' out of the statute." Quoting *TRW Inc. v. Andrews*, 534 U.S. 13, 31 (2001), the Supreme Court held that "'[A] statute ought . . . to be so construed that . . . no clause, sentence, or word shall be superfluous, void, or insignificant' (internal quotation marks omitted)." *Id.*

The same reasoning applies here, and requires the Court to reject the IAA's statutory interpretation.

**D. The IAA's present Motion must be denied. And if the IAA wishes to seek relief from the automatic stay, it must file a new motion seeking such relief.**

As indicated in Part III.B of this Opinion, the Court construes the IAA's present Motion as limited to only seeking an order confirming *that the automatic stay does not apply*, with respect to actions the IAA wishes to take to obtain possession of the Property, based on Bankruptcy Code §§ 362(b)(10) and 541(b)(2). Because the Court rejects the IAA's interpretation of §§ 362(b)(10) and 541(b)(2), the IAA's Motion must be denied.

It follows that the automatic stay *does* apply, and it prevents the IAA from taking any action to enforce the State Court Decision to dispossess the Debtor of the Property. *See, e.g.*, 11 U.S.C. §§ 362(a)(1), 362(a)(2).[21] Counsel for the IAA conceded during the hearing that this is so,

---

[21] These provisions of § 362(a) state that, with exceptions not applicable here, the filing of a bankruptcy petition:

> operates as a stay, applicable to all entities, of—
>
> (1) the commencement or continuation, including the issuance or

16

if, as the Court has now ruled, § 362(b)(10) does not apply. The Court does not construe the IAA's present Motion as seeking relief from the automatic stay, for example, based on any of the provisions of Bankruptcy Code § 362(d).

To the extent the IAA attempted, in its reply brief, or during the hearing on the Motion, to broaden its Motion to include seeking relief from stay, or to argue that its Motion actually sought relief from stay in the first place, the Court rejects this attempt. The Motion itself, to which the Debtor filed its written response, clearly did not seek relief from the automatic stay. And the Court agrees with the Debtor that it would be unfair and inappropriate for the Court to allow the Motion to be transformed into one seeking relief from stay. That would deprive the Debtor of a full and fair opportunity to file a written response to such a request for relief.

There is an additional reason that counsels against the Court allowing the IAA's present Motion to slide into one seeking stay relief. The question of whether the Court should grant relief from the automatic stay, to permit the IAA to obtain possession of the Property at this time, is not a simple one. Rather, it is a difficult and complex question, potentially involving several disputed issues that the parties have not yet fully briefed. It is fair and appropriate for the Court

---

employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

(2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;

11 U.S.C. §§ 362(a)(1), 362(a)(2).

to require the parties to flesh these issues out by briefing and arguing them in the context of a new motion.

The complexity of the stay relief question arises, in part, because the Debtor has an appeal pending in the Indiana courts that could result in a reversal of the State Court Decision that the lease terminated, such that the Lease would no longer be deemed terminated. If the Debtor were to lose possession of the Property now, that could quickly ruin the Debtor's hotel business and destroy any chance of a successful reorganization, so that any later success by the Debtor in its state court appeal would be a useless victory. But if the automatic stay remains in place, the IAA may have valid arguments that some form of adequate protection must be ordered, to protect its ownership interest in the Property while the Debtor's state court appeal proceeds.

For all of these reasons, but especially because of the way the Motion is worded, the Court construes the present Motion as not seeking relief from the automatic stay. And it follows that the Court's denial of the present Motion will not preclude the IAA from filing a new motion that expressly seeks relief from the automatic stay.

**IV. Conclusion**

For the reasons stated in this Opinion, the Court will enter an order denying the IAA's Motion, without prejudice to the IAA's right to file a new motion that seeks relief from the automatic stay based on one or more of the grounds under 11 U.S.C. § 362(d).

**Signed on June 18, 2018**



/s/ Thomas J. Tucker
_____
**Thomas J. Tucker**
**United States Bankruptcy Judge**